UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY AND NYSAEN CROFTON,

    Plaintiffs,

v.

BANK OF AMERICA HOME LOANS, ET AL.,

    Defendants.

_____/

Case No. 11-10124

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [5]**

    This residential mortgage-loan dispute comes before the Court on a motion to dismiss filed by Defendants Bank of America, N.A.,[1] as successor to Countrywide Bank, FSB, and Mortgage Electronic Registration Systems, Inc. ("MERS").  Plaintiffs Randy and Nysaen Crofton executed a residential mortgage and note on June 17, 2008.  The 30-year mortgage secured the $157,793.00 Plaintiffs borrowed that date from Countrywide for the purchase of their home on 1338 Chissom Trail, Flint, Michigan.  The interest rate on Plaintiffs' note was 6.375% per year.  (Compl. ¶¶ 6-8, Ex. A, Mortg.; Ex. B, Note.)  Plaintiffs filed their complaint in state court on November 10, 2010.  This matter was subsequently removed here based on this Court's original jurisdiction over Plaintiffs' federal claims as well as its having diversity jurisdiction.

---

[1] Plaintiffs erroneously identify Defendant Bank of America, N.A. as Bank of America Home Loans.  Bank of America Home Loans is a trade name of Bank of America, N.A. and is not a separate entity.

Plaintiffs' Complaint alleges that Defendants (1) violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601(1), *et seq.*, by failing to disclose an illegal kickback to a mortgage broker in the form of a yield spread premium, a loan origination fee, or loan discount fee (Compl. ¶¶ 14-23); (2) violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d)(6) by refusing to grant Plaintiffs credit on substantially the terms requested (*id.* at ¶¶ 41-47); (3) violated Michigan's Mortgage Brokers, Lenders, and Servicers Licensing Act ("MBLSLA"), Mich. Comp. Laws § 445.1651, *et seq.*, when Countrywide and MERS engaged in fraud with regard to fees charged to Plaintiffs (*id.* at ¶¶ 24-28); (4) committed fraud when Countrywide made material representations about Plaintiffs' interest rate and the payment of a yield spread premium (*id.* at ¶¶ 29-35); and (5) illegally conspired with each other to induce Plaintiffs to enter into a mortgage that had little or no benefit to them (*id.* at ¶¶ 36-40). Plaintiffs seek an injunction that would prohibit Defendant Bank of America from enforcing its mortgage loan contract with Plaintiffs, a declaration that their mortgage loan is void due to fraud, and money damages.

For the reasons stated below, Defendants' motion to dismiss is GRANTED.

**I.  Facts**

In May and June 2008, Plaintiffs executed identical loan applications for a 30-year, 6.37% fixed rate, FHA mortgage loan in the amount of $152,793.00. (Compl., Ex. F; Defs.' Mot., Ex. A, Uniform Residential Loan Applications.) Both Uniform Residential Loan Applications identify Plaintiffs as the Borrowers, state that the form was completed by an interviewer employed by Countrywide, Patricia Kelso, who obtained the information from Plaintiffs via telephone on May 20, 2008. Plaintiffs signed the loan applications on May 29, 2008 and June 17, 2008, acknowledging each time that the information provided was true

and correct on the date it was signed and that the Lender, its agents, or assigns could rely on the information contained in the applications. Plaintiffs' applications state that the loan was to be used to purchase property located at 1338 Chissom Trail, Flint, Michigan, and that Plaintiffs intended to use that property as their primary residence. (*Id.*) In connection with their FHA mortgage loan, Plaintiffs also submitted a HUD/FHA application for insurance under the National Housing Act. (*Id.*, HUD/VA Addendum to Uniform Residential Loan Application.) That form identified Countrywide as the Lender, Plaintiffs as Borrowers, an interest rate of 6.375%, a loan amount of $152,793.00, and expressly stated that this loan amount includes the up front mortgage insurance premium (UPMIP) of $2,258.03.

The Note Plaintiffs executed at their June 17, 2008 closing identified Countrywide as the Lender. Plaintiffs promised to pay Countrywide $152,793.00 "[i]n return for a loan received from Lender," plus interest at the rate of 6.375% "per year until the full amount of principal has been paid." (Compl., Ex. B, Note.) On June 17, 2008, Plaintiffs also executed a mortgage on the residential property they were purchasing, as security for the $152,793.00 note executed that same day. Plaintiffs were identified as the mortgagors. Defendant MERS was identified as the mortgagee and nominee for the Lender Countrywide, its successors and assigns. (Compl., Ex. A, Mortgage.)

At the June 17, 2008 closing, Plaintiffs also signed a form titled "Itemization of Amount Financed," acknowledging that they received and read the disclosure. (Compl., Ex. D, Itemization.) That form disclosed that, from the $152,793.00 that Plaintiffs were borrowing from Countrywide, some items were being prepaid and thus were not included in the $149,280.31 amount that was to be financed at 6.375%. These disclosed items include:

.   Loan Processing Fee of $455.00

- FHA UPMIP (up front mortgage insurance premium) of $2,258.03.

(*Id.*) A Truth in Lending Disclosure Statement, executed by Plaintiffs that same date, disclosed that the amount to be financed was $149,280.31. (Compl., Ex. C, TILA Discl. Stmt.)

The June 17, 2008 HUD-1 Settlement Statement, prepared by Metropolitan Title Company (the "settlement agent"), identified the actual settlement costs paid to and by Metropolitan Title and showed items that were paid outside the closing by marking them "(POC)." The Settlement Statement reveals that a Sales/Broker Commission was being paid by the Seller to RE/MAX Select. It also shows the following items that Plaintiffs challenge in their lawsuit:

- Appraisal Fee - LandSafe Appraisal Services, Inc.   POC-B   $350.00
- Credit Report  - LandSafe Credit, Inc.   POC-B   35.00
- Hazard Insurance Premium for 1 year(s) to Eve Insurance   POC-B   $704.90

(Compl., Ex. E, HUD-1 Settlement Stmt, Item Nos. 703, 803, 804 and 903, respectively.)

Plaintiffs concede that the HUD-1 Settlement Statement does not disclose any mortgage broker compensation, no loan origination fee, no loan discount, and no yield spread premium. (Compl. ¶ 21; Ex. E.)

Despite their signatures and acknowledgment that they received and read the above closing documents, Plaintiffs allege that they did not have time to adequately review each document. (Compl. ¶ 9.) The crux of each of Plaintiffs' claims is their belief that they were fraudulently charged a non-disclosed yield spread premium in the form of an excessive interest rate on their mortgage loan that was a "kickback" to a mortgage broker. In support,

4

Plaintiffs allege that Countywide acted as both a mortgage broker and a mortgage lender on their loan; and, while serving in the capacity as a mortgage broker, Countrywide paid the $350 appraisal fee, the $35 credit report fee, and the $704.90 hazard insurance premium on Plaintiffs' behalf. Because these payments provided them with only a nominal benefit, Plaintiffs allege that Countrywide must have made these payments as "a pretext to conceal the fact" that Plaintiffs were actually charged a yield spread premium when the broker was able to obtain a higher interest rate for Plaintiffs' loan than it should have. (Compl. ¶¶ 10-13, 20-22, 30, 39.) In their Response, Plaintiffs speculate that the three separate entities that received the appraisal fee, the credit report fee and the hazard insurance fee indicate that a mortgage broker was used on their mortgage loan and they further speculate that one of these entities or Countrywide was the mortgage broker. (Resp. at 2.)

This matter is now before the Court on Defendants' motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**II.    Rule 12(b)(6) Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis

omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)  The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 1950 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Id.* (internal quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Id.* at 1949 (internal quotation marks and citation omitted).

    Defendants bring their motion pursuant to Rule 12(b)(6).  A Rule 12(b)(6) analysis generally forbids a court from considering documents outside the pleadings; however, when

"a document is referred to in the complaint and is central to the plaintiff's claim . . ., the defendant may submit an authentic copy to the court to be considered on a motion to dismiss." *Greenberg v. Life Insurance Co. of Va.*, 177 F.3d 507, 514 (6th Cir 1999) (internal quotation marks and citations omitted). The court's consideration of documents under these circumstances does not convert a motion to dismiss into a motion for summary judgment. *Id.* A court may also consider "matters of public record," such as documents recorded with the Register of Deeds when considering a motion to dismiss under Rule 12(b)(6). *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

### III. Analysis

#### A. RESPA Claims - Time Barred

Defendants argue that Plaintiffs' RESPA claims against MERS should be dismissed because that Act does not apply to MERS. Defendants further argue that Plaintiffs' RESPA claims against Bank of America should be dismissed because (1) Plaintiffs' claims are time-barred under that Act's one-year statute of limitation; and (2) even if not barred, Plaintiffs have not and cannot allege facts establishing that Countrywide gave a kickback in the form of a yield spread premium to a broker. This Court agrees that Plaintiffs' RESPA claims should be dismissed.

As to Defendant MERS, Plaintiffs have not and cannot allege that MERS performed any settlement services governed by RESPA. The documents Plaintiffs attach to their Complaint prove otherwise. MERS is the mortgagee or mortgage holder of Plaintiffs' residential mortgage, as nominee for the Lender Countrywide, or its assigns or successors. Plaintiffs do not dispute this argument in their Response. Even if RESPA did apply to Defendant MERS, as discussed below, Plaintiffs' RESPA claims are time-barred.

As to both Defendants, Plaintiffs RESPA claims are time-barred under RESPA's one-year statute of limitations. *See* 12 U.S.C. § 2614. Plaintiffs allege that Defendants violated § 2607 of RESPA by "[a]ccepting fees, kickbacks or other things of value, in the form of a yield spread premium, from Countrywide Bank, FSB" and concealed the yield spread premium by paying an appraisal fee to Landsafe Appraisal Services, Inc., a credit report fee to LandSafe Credit, Inc., and a hazard insurance premium to Eve Insurance. (Compl. ¶¶ 18-22.) A yield spread premium is:

> a payment by a mortgage lender to a mortgage broker, made when the mortgage broker's client (the borrower) takes out a loan from the mortgage lender at a higher interest rate. This device allows borrowers to spread out their brokerage fees over the entire life of the loan, via a higher interest rate, rather than paying their brokers the entire fee at the time of closing. On the other hand, it can also permit unscrupulous brokers to make money at their client's expense.

*Allan v. GreenPoint Mortg. Funding,* 730 F. Supp. 2d 1071, 1073 n.1 (N.D. Cal. 2010) (citing *Lane v. Residential Funding Corp.*, 323 F.3d 739, 743 (9th Cir. 2003)).

Plaintiffs' alleged violations of § 2607 occurred on June 17, 2008, the date Plaintiffs' signed their loan agreement. They failed, however, to file their complaint until November 10, 2010, more than two years after the alleged violation occurred. Under § 2614 of RESPA, Plaintiffs were required to file their case alleging a violation of § 2607 within one year from the date the violation is alleged to have occurred. Because they failed to comply with § 2614, Plaintiffs' RESPA claims are time-barred.

Plaintiffs' claims of fraudulent concealment lack merit. As recently observed by the Sixth Circuit,

> [i]n order to establish equitable tolling by the doctrine of fraudulent concealment, the plaintiffs must allege and establish that: 1) defendants concealed the conduct that constitutes the cause of action; 2) defendants' concealment prevented plaintiffs from discovering the cause of action within the limitations

period; and 3) until discovery, plaintiffs exercised due diligence in trying to find out about the cause of action.

*Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009). Plaintiffs cannot show that Defendants affirmatively concealed a yield spread premium that was paid to a mortgage broker and thus prevented Plaintiffs from discovering their RESPA claims within the limitations time period. The appraisal fee paid to Landsafe Appraisal Services, Inc., the credit report fee paid to LandSafe Credit, Inc., and the hazard insurance premium paid to Eve Insurance that Plaintiffs' allege were illegal indirect broker fees in the form of yield spread premiums were disclosed in the HUD-1 Settlement Statement that Plaintiffs signed on June 17, 2008. (Compl., Ex. E, HUD-1 Settlement Stmt.) Plaintiffs' argument in their Response -- that it is reasonable to infer that the "B" in the items marked "POC-B" on the Settlement Statement means that a mortgage broker, i.e., Landsafe Inc., and not the borrower paid these fees -- is pure speculation and does nothing to advance Plaintiffs' fraudulent concealment argument. This information was available to Plaintiffs at the time of their June 2008 closing. RESPA afforded them one year to diligently pursue whether a mortgage broker paid these fees, and they failed to do so. Moreover, despite arguments in their Response that they could have gotten an interest rate in the range of 5%, the 6.375% interest rate on Plaintiffs' mortgage and note is the same as that disclosed on Plaintiffs' May and June 2008 Loan Applications. (Defs.' Mot., Exs. A, B, and C; Pl.'s Compl, Ex. F.) Plaintiffs had ample time within the limitations period to pursue their claim that they could have obtained a better interest rate. The basic facts that give rise to Plaintiffs' RESPA claims were not concealed by Defendants. Michigan law does not allow Plaintiffs to disavow knowledge of the documents that they signed. *See Watts v. Polaczyk*,

619 N.W.2d 714, 717 (Mich. Ct. App. 2000) (observing that "Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents.").  In sum, Plaintiffs cannot show that they are entitled to more than the one year provided under RESPA to explore their claim that a mortgage broker paid certain fees outside of closing and they qualified for and could have obtained a better interest rate than 6.375%.

### B.  ECOP Claims - Time Barred/Failure to State Claim

Plaintiffs allege that their mortgage application with Countrywide Bank had specific terms, but Countrywide refused to grant Plaintiffs a mortgage loan on substantially the same terms as set out in their loan application and thus violated § 1691(d)(6) of the ECOP. (Compl. ¶¶ 43-46.)  Defendants respond that Plaintiffs' ECOP claims are time-barred; and even if not, are refuted by Plaintiffs' Loan Applications, Mortgage, and Note.  This Court agrees.

First, as Defendants point out, Plaintiffs received the same identical terms as set out in the May and June 2008 loan applications.  Second, even if Plaintiffs could establish an ECOP violation, their claims are time-barred and thus fail as a matter of law.

The ECOP provides a two-year statute of limitations period:  "No such action shall be brought later than two years from the date of the occurrence of the violation . . . ."  15 U.S.C. § 1691e(f).  Plaintiffs obtained their mortgage loan on June 17, 2008, and did not file this action until November 10, 2010.  Plaintiffs' ECOP claims are thus time-barred.

### C.  Michigan's MBLSLA  - Failure to State Claim

Plaintiffs allege that Countrywide and MERS violated Michigan's Mortgage Brokers, Lenders and Servicers Licensing Act ("MBLSLA") by engaging in fraud, deceit, and/or

10

material misrepresentations in connection with their mortgage transaction. Specifically, Plaintiffs' allege that Defendants charged them excessive fees and induced them to enter into a transaction that provided them little or no benefit. (Compl. ¶¶ 25, 27.) Defendants argue that the MBLSLA does not apply to them. This Court agrees.

As to Defendant MERS, the MBLSLA provides that "[a] person shall not act as a mortgage broker, mortgage lender, or mortgage servicer without first obtaining a license under this act or registering under section 6 . . . ." Mich. Comp. Laws § 445.1652(1). Here, Plaintiffs do not allege and cannot show that Defendant MERS is a mortgage broker, a mortgage lender, or a mortgage servicer as expressly defined in the Act. Plaintiffs cannot ignore the statutory definitions provided in the Act and rely instead on a definition of "mortgagee" found in Black's Law Dictionary to show that the MBLSLA applies to MERS.

The Court now addresses Plaintiffs' MBLSLA claims against Defendant Bank of America. The MBLSLA does not apply to Defendant Bank of America. Because Countywide Bank, FSB was a federally chartered savings association at the time of Plaintiffs' mortgage loan and thus a "depository financial institution," the MBLSLA does not apply to claims against it or its successor Bank of America. *See* Mich. Comp. Laws § 445.1675(a). The MBLSLA defines a "depository financial institution" as "a state or nationally chartered bank, a state or federally chartered savings and loan association, savings bank, or credit union, or an entity of the federally chartered farm credit system." Mich. Comp. Laws § 445.1651a(f). It is undisputed that Countrywide Bank, FSB was a federally chartered savings bank at the time of Plaintiffs' loan and thus expressly excluded from the MBLSLA's coverage. As its successor, Defendant Bank of America, is likewise excluded from MBLSLA's coverage.

11

In their Response, Plaintiffs argue that they should be allowed to amend their complaint to add an MBLSLA claim against an alleged Countrywide subsidiary, LandSafe, Inc. (Resp. at 6.) Any such amendment would be futile because the MBLSLA would not apply to any subsidiary or affiliate of Countrywide Bank. The MBLSLA expressly provides that it does not apply to:

> A mortgage broker, mortgage lender, or a mortgage servicer that is a subsidiary or affiliate of a depository financial institution or a subsidiary or affiliate of a holding company of a depository financial institution, if the depository financial institution maintains its main office or a branch office in this state.

Mich. Comp. Laws § 445.1675(m). As Plaintiffs concede in their Response at 7 and as revealed in their Loan Applications, Countrywide Bank, FSB maintained a branch office in Michigan before it merged into Defendant Bank of America. (Pls.' Ex F, Loan Application at 3 revealing Countrywide Bank, FSB location at "6491 Sashabaw Road, Clarkston, MI 48346.")

Because the MBLSLA does not apply to Defendants, Plaintiffs' MBLSLA claims fail as a matter of law.

### D. Plaintiffs' Fraud Claims - Failure to State a Claim

Plaintiffs' complaint alleges, in conclusory fashion, the elements of a fraudulent misrepresentation claim. To state a claim of fraudulent misrepresentation, Plaintiffs must establish that (1) Defendants made a material representation; (2) it was false; (3) when Defendants made the representation, the knew it was false or "made it recklessly, without any knowledge of its truth, and as a positive assertion;" (4) Defendants made it with the intent that Plaintiffs should act upon it; (5) Plaintiffs "acted in reliance upon it;" and (6) Plaintiffs "thereby suffered injury. Each of these facts must be proved with a reasonable

degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to recovery." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976) (internal quotation marks and citation omitted). It is also well-settled in Michigan law that "an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual in nature and do not constitute fraud." *Id.*

To satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b), Plaintiffs must: "(1) specify the statements that the plaintiff[s] contend[] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (internal quotation marks and citation omitted). At a minimum, Plaintiffs "must allege the time, place and contents of the misrepresentations upon which they relied." *Id.* Plaintiffs "also must allege facts from which it could be concluded that [their] reliance was reasonable." *Issa v. Provident Funding Group, Inc.*, No. 09-12595, 2010 WL 538298, *5 (E.D. Mich. Feb. 10, 2010) (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 553-54 (Mich. Ct. App. 1999)).

The allegations in Plaintiffs' complaint do not satisfy the particularity requirements of Rule 9(b). Plaintiffs attempt to remedy this Rule 9(b) defect in their response brief. They provide the Court with the following facts. When applying for their mortgage loan on or about June 17, 2008 at a Countrywide branch office in Clarkston, Michigan, Plaintiffs informed Countrywide Bank, through its employee/agent Patricia Kelso, that they wanted the best interest rate available given their credit score and financial information. They further informed Ms. Kelso that they were requesting a interest rate in the range of 5%

13

because they believed that to be the going market rate for a mortgage.  Countrywide, through its agent Ms. Kelso, misrepresented to Plaintiffs that an interest rate in the range of 5% was not possible given their credit score and financial circumstances and told Plaintiffs that the offered rate of 6.375% was the corresponding interest rate based on their creditworthiness.  Plaintiffs allege that this was a false statement and cite as support a Federal Reserve Statistical Release H.15.  Plaintiffs further allege that, had they known that this was false, they would not have agreed to the mortgage loan with Countrywide with the offered rate of 6.375% and would not have suffered damages in the form of increased interest payments.  (Resp. at 7-8.)

Plaintiffs' attempt to amend their complaint as proposed would be futile because Plaintiffs cannot show that their reliance on the alleged fraudulent misrepresentation was reasonable.  Plaintiffs do not allege facts allowing for a reasonable inference that Countrywide somehow prohibited them from going to another mortgage lender to see if they could get a better interest rate. Under Michigan law, "there can be no fraud where the means of knowledge regarding the truthfulness of the representation are available to the plaintiff and the degree of their utilization has not been prohibited by the defendant."  *Webb v. First of Michigan Corp.*, 491 N.W2d 851, 853 (Mich. Ct. App. 1992).  Here, Plaintiffs do not dispute that their Loan Applications, their mortgage, and their note all state an interest rate of 6.375%. Accordingly, because Plaintiffs entered into these subsequent agreements, their reliance on any alleged false, oral representations cannot state a claim of fraud. Under Michigan law, "[r]eliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement."  *Cook v. Little Caesar Enter., Inc.*, 210 F.3d 653, 658 (6th Cir. 2000).

To the extent Plaintiffs are basing their fraudulent misrepresentation claim on Countrywide's agent's oral representation to them that 6.375% was "the best rate" available to them, this claim likewise fails. It is well-established in Michigan law that "[a]n action for fraud may not be predicated upon the expression of an opinion or salesmen's talk in promoting a sale, referred to as puffing." *Van Tassel v. McDonald Corp.*, 407 N.W.2d 6, 8 (Mich. Ct. App. 1987) (citing cases). In *Van Tassel*, the court observed that "a mere honest expression of opinion will not, although proven erroneous, be regarded as fraud." *Id.* (internal quotation marks and citation omitted). Just like a car salesman telling a potential customer that the amount he is quoting is the "best" price the customer can get for their trade-in or new car, Countrywide's agent's representation to Plaintiffs that they were getting the "best interest rate" is "a mere honest expression of opinion" that will not, even if proven erroneous, "be regarded as fraud." *Id.*

For these reasons, Plaintiffs cannot state an actionable claim of fraud even if allowed to amend their complaint and add the allegations they now provide.

### E. Civil Conspiracy Claim - Failure to State a Claim

Finally, the Court addresses Plaintiffs' civil conspiracy claim. Under Michigan law, a civil conspiracy claim "is not cognizable without a cognizable underlying tort." *Battah v. ResMAE Mortg. Corp.*, ___ F. Supp. 2d ___, 2010 WL 4260530, *5 (E.D. Mich. Oct. 28, 2010) (citing *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358-59 (Mich. Ct. App. 1992)). Here, Plaintiffs failed to establish their underlying fraud claim and thus their civil conspiracy claim also fails. *Id.*

### IV. Conclusion

For the above-stated reasons, Defendants' motion to dismiss is GRANTED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: March 31, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2011, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager